475 A.2d 843

**COMMONWEALTH of Pennsylvania,**

v.

**Floyd Joseph MONACO, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1983.

Filed May 18, 1984.

Richard Audino, New Castle, for appellant.

William M. Panella, District Attorney, New Castle, for Commonwealth, appellee.

Before WIEAND, JOHNSON and HESTER, JJ.

WIEAND, Judge:

During the early morning of June 13, 1979, Floyd Monaco shot and killed Albert Izzo, a plainclothes state policeman.

Monaco entered a plea of guilty to murder generally and, after hearing before the Honorable J. Quint Salmon, specially presiding, was adjudged guilty of murder in the first degree. A subsequent motion to withdraw the plea of guilty was denied, and Monaco was sentenced to prison for life. On direct appeal from the judgment of sentence, Monaco contends (1) that the trial court erred in denying his motion to withdraw the plea of guilty; (2) that the evidence was insufficient to sustain a finding of murder in the first degree; and (3) that the trial court erred in denying a pre-trial motion for change of venue. We find no merit in these contentions and, accordingly, affirm the judgment of sentence.

A degree of guilt hearing commenced on July 7, 1980 and was concluded on July 28, 1980. The evidence produced during the hearing disclosed that appellant, together with Joseph Querriera and Joseph Frank, Jr., had been involved in a drug dealing operation centered in New Castle, Lawrence County. This drug operation had been under investigation by a "strike force" made up of law enforcement officers from Pennsylvania and Ohio. In the early morning of June 13, 1979, appellant and Querriera were making a delivery of approximately fifty pounds of marijuana to the rear entrance of Frank's apartment in New Castle. Appellant and Querriera waited at their car while a purchase was negotiated with Frank by a group of interested buyers, including Trooper Daniel Haggerty, an undercover state policeman. On the pretext of retrieving money from his car, Haggerty left Frank's apartment to signal members of the strike force to move in. Trooper Izzo, in plain clothes, was a member of the strike force. When he and other policemen advanced, shouting "police" and "freeze", appellant turned around slowly, faced the advancing officers with a .357 magnum revolver, and shot Izzo in the abdomen when he was approximately ten or twelve feet distant. Appellant then turned and ran. He continued to fire at the police, however, who returned the fire. A second bullet entered Izzo's back after ricocheting off the wheel of a

parked car. Izzo died several hours later as a result of shock and trauma caused by the bullet wounds. At the hearing, medical evidence did not demonstrate which of the two bullets had been the primary cause of death. Ballistics evidence confirmed that the bullet which struck Izzo in the abdomen had been fired from appellant's gun. The source of the second bullet could not be ascertained with the same precision because, in ricocheting, the bullet had become so misshapen as to prevent certainty in determining ballistically its source. Ballistics evidence showed, nevertheless, that the bullet could not have been fired by any gun carried by police but could have been fired by appellant's .357 magnum. The evidence did not disclose that shots had been fired by anyone other than appellant and the police officers.

At the close of the evidence on July 28, but before closing arguments of counsel, appellant filed a written motion to withdraw his plea of guilty. Following the closing arguments of counsel but before the trial court rendered a decision, appellant filed, on August 18, a counseled motion for leave to withdraw his earlier request to withdraw the plea of guilty. A hearing was held on September 9; and on September 18, the court entered an order allowing appellant to revoke the motion to withdraw his plea of guilty. On February 19, 1981, the court rendered its decision finding appellant guilty of murder in the first degree. After that decision had been filed but prior to sentencing, appellant again moved to withdraw his guilty plea. This request was denied.

■ The standard for permitting a defendant to withdraw a plea of guilty varies according to the point in the proceedings at which the motion to withdraw is made. In *Commonwealth v. Lesko*, 502 Pa. 511, 467 A.2d 307 (1983), the Supreme Court said:

> The proper standard to be used prior to sentencing is whether a fair and just reason exists. If the trial court finds any fair and just reason for the withdrawal, such withdrawal should be permitted because of the importance of an accused's rights to a trial by his peers.

However, once a sentence has been imposed, an accused should be permitted to withdraw his guilty plea only "to correct a manifest injustice". *Commonwealth v. Starr*, 450 Pa. 485, 301 A.2d 592 (1973). The basis for the difference between those two standards is clear. Allowing an accused to withdraw his guilty plea after imposition of sentence requires a stricter standard to prevent defendants from using a guilty plea as a tool for previewing the sentencing by the court. Such a misuse does not occur when withdrawing a guilty plea prior to sentencing.

*Id.*, 502 Pa. at 517, 467 A.2d at 310. See also: *Commonwealth v. Shaffer*, 498 Pa. 342, 446 A.2d 591 (1982).

▬▬ The trial court in the instant case applied the more lenient, pre-sentence standard but concluded that appellant had failed to advance a "fair and just reason" for withdrawal. The only reason which appellant gave to support the request to withdraw his plea was a weakness which he perceived in the Commonwealth's evidence as it pertained to the cause of death. This was not a "fair and just reason." It was inadequate for several reasons. In the first place, it was the same reason which appellant had previously advanced and then had withdrawn before the court made its decision. Secondly, " '[w]here an accused enters a plea of guilty to murder generally, it is sufficient in itself to sustain a conviction of [third degree murder].' " *Commonwealth v. Shaver*, 501 Pa. 167, 169, 460 A.2d 742, 743 (1983), quoting *Commonwealth v. Walker*, 460 Pa. 658, 663 n. 7, 334 A.2d 282, 284 n. 7 (1975). Appellant's plea of guilty to murder, therefore, made it unnecessary for the Commonwealth to prove the precise cause of death. His plea constituted an admission that there had been a causal connection between his conduct and the death of Trooper Izzo. *Commonwealth v. Dillinger*, 440 Pa. 336, 269 A.2d 505 (1970). The fact that appellant's .357 magnum had been the death dealing weapon, moreover, was confirmed by the Commonwealth's evidence. Even though Izzo had been struck by two bullets and only one could be traced specifically by ballistics testing to appellant's gun, the cir-

cumstantial evidence was sufficient to establish that appellant's gun had been the source of the second bullet as well. Appellant's request to withdraw his plea of guilty did not allege that he was innocent of the shooting. His perceived weakness in the Commonwealth's evidence was unwarranted and did not constitute adequate reason for permitting him to withdraw his plea of guilty after the degree of guilt hearing had been completed and a finding had been made by the court.

In *Commonwealth v. Lesko, supra,* the defendant attempted to withdraw a plea of guilty to murder of the second degree. The trial court denied the request. The Supreme Court affirmed, saying that defendant's "petition was akin to a post-sentencing petition" because the defendant "was well aware of the only sentence imposable for the crime to which he pled guilty." *Id.,* 502 Pa. at 517, 467 A.2d at 310. In the absence of fair and just reason, it was too late to permit the appellant in this case to withdraw his guilty plea after the degree of guilt hearing had been completed and a finding of first degree murder made. The trial court could properly refuse to permit appellant to use the plea of guilty as a means for testing the strength of the Commonwealth's case. Compare: *Commonwealth v. Middleton,* 504 Pa. 352, 473 A.2d 1358 (1984) (threat of counsel to withdraw from case if defendant did not plead guilty held "fair and just" reason for withdrawing guilty plea after degree of guilt hearing but before sentencing).

■ In determining the sufficiency of the evidence to show first degree murder, we are required to view the evidence, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth. The test is whether the evidence, thus viewed, is sufficient to prove every element of the crime of murder in the first degree beyond a reasonable doubt. See: *Commonwealth v. Macolino,* 503 Pa. 201, 205–06, 469 A.2d 132, 134 (1983); *Commonwealth v. Baylor,* 323 Pa.Super. 9, 12, 469 A.2d 1134, 1135 (1983); *Commonwealth v. Rosetti,* 322 Pa.Super. 536, 538, 469 A.2d 1121, 1122 (1983).

■ The Commonwealth's evidence was sufficient to establish a fully formed intent to kill. The necessary intent could be inferred from the fact that appellant took deliberate aim at Izzo's abdomen, which was ten or twelve feet distant, with a deadly .357 magnum and fired. See: *Commonwealth v. Madison*, 501 Pa. 485, 462 A.2d 228 (1983); *Commonwealth v. Padgett*, 465 Pa. 1, 348 A.2d 87 (1975); *Commonwealth v. Wyche*, 320 Pa.Super. 483, 467 A.2d 636 (1983); *Commonwealth v. Hartzell*, 320 Pa.Super. 249, 467 A.2d 22 (1983); *Commonwealth v. Clemmons*, 312 Pa.Super. 475, 459 A.2d 1 (1983), rev'd. on other grounds, —— Pa. ——, 479 A.2d 955 (1984). The intent to kill could be inferred irrespective of whether the primary cause of death had been the first or second bullet or a combination of both. Appellant turned and shot Izzo despite clear and unmistakable police commands to "freeze." The trial court could find from this evidence that appellant deliberately elected not to surrender but to shoot it out with arresting police officers.

■ The trial court's denial of a pre-trial motion for change of venue is not a viable issue. The entry of a plea of guilty operated to waive all non-jurisdictional defects and defenses. *Commonwealth v. Unger*, 494 Pa. 592, 595, 432 A.2d 146, 147 (1980); *Commonwealth v. Montgomery*, 485 Pa. 110, 114, 401 A.2d 318, 319 (1979); *Commonwealth v. Everett*, 290 Pa.Super. 344, 351, 434 A.2d 785, 789 (1981). See: *Commonwealth v. Faust*, 324 Pa.Super. 492, 499, 471 A.2d 1263, 1267 (1984). Procedural defects and errors occurring prior to the entry of the plea are relevant only to the extent they affect the voluntary nature of the plea itself. *Commonwealth v. Rice*, 456 Pa. 90, 93 n. 3, 318 A.2d 705, 707 n. 3 (1974). Otherwise, pre-trial, procedural defects and determinations are waived by the entry of a plea of guilty. See, e.g.: *Commonwealth v. Montgomery, supra* (defect in form of indictment); *Commonwealth v. Emerick*, 434 Pa. 256, 252 A.2d 365 (1969) (suppression of confession); *Commonwealth v. Faust, supra* (suppression of evidence); *Commonwealth v. Keller*, 292 Pa.Super. 165,

436 A.2d 1203 (1981) (suppression of evidence and confession); *Commonwealth v. Everett, supra* (adequacy of factual basis for charge to which plea of guilty entered).

The judgment of sentence is affirmed.